**Leopoldo MORALES, Plaintiff-Appellee,**

v.

**GARIJAK, INC., Defendant-Appellant.**

No. 86–2442.

United States Court of Appeals, Fifth Circuit.

Oct. 19, 1987.

T. Mark Blakemore, Frank E. Perez, Royston, Rayzor, Vickery & Williams, Brownsville, Tex., for defendant-appellant.

John Wm. Black, Albert Villegas, Law Offices of Albert Villegas, Brownsville, Tex., for plaintiff-appellee.

Before RUBIN, GARZA, and JONES, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A shipowner challenges an assessment of compensatory damages and attorney's fees for its failure to pay maintenance and cure to an injured seaman. Finding substantial

evidence to support the jury verdict that the shipowner acted unreasonably, we uphold the award of compensatory damages, but because the evidence is insufficient to show that the failure to pay was so unreasonable as to be arbitrary, we vacate the award of attorney's fees. Since the jury was permitted to render a single award for both kinds of damages, we remand for determination of the amount of compensatory damages. We also modify the judgment to provide that Garijak shall continue to pay maintenance and cure until Morales's physician confirms that he has reached maximum cure.

## I.

Leopoldo Morales sued Garijak, Inc. under the Jones Act and general maritime law for injuries, primarily a broken wrist, that he allegedly sustained while employed as a seaman aboard the F/V GARIJAK. According to Morales, he slipped and fell on the GARIJAK's back deck. He alleged that his injuries were proximately caused by the GARIJAK's unseaworthy condition and Garijak's negligence and lack of due care. Morales also alleged that Garijak arbitrarily and capriciously refused to pay him maintenance and cure benefits.

At trial, Morales testified that, on July 27, 1983, while working as a shrimper aboard the GARIJAK, he slipped and fell backwards, thereby suffering his injuries. He stated that another shrimper, Oscar Castillo, laughed at him for falling down, causing him and Castillo to get into an argument. Morales testified that he informed the captain, Julio Sanchez, about his accident but that Sanchez did not pay much attention to him. According to Morales, he did not tell Sanchez that he wanted to return to port to see a doctor because he needed to complete the trip to make more money. Morales testified that he worked approximately two weeks after his accident and that, two or three days after he returned to port, he went to Garijak's office to obtain his paychecks, received them from the secretary, but did not tell her about his accident. Morales also stated that he informed Ramiro Alvarado, a co-worker, about his accident.

Alvarado testified that he did not see the accident and that Morales did not tell him about it. He did, however, overhear Morales and Castillo arguing about the episode. He told Captain Sanchez about Morales's fall, but Sanchez did not pay much attention. Alvarado also testified that Sanchez had telephoned him after they had returned to port and inquired whether he had seen anybody fall on the GARIJAK and that he had told Sanchez that Morales had fallen on the back deck. Alvarado later told Garijak's lawyers that he had not seen Morales fall, but that he had heard Morales and Castillo arguing about it. He did not, however, observe Morales having any difficulty in performing his work.

Julius Collins, the president of Garijak, testified that he received a letter dated August 29, 1983, from Morales's attorney, Albert Villegas, informing him that Morales had injured himself while aboard the GARIJAK. The next day he telephoned Villegas, who informed him that Morales had gone to see Dr. Charles Daniel in Brownsville, Texas. Collins testified that he did not pay maintenance and cure to Morales because after conducting an investigation he concluded that although Morales was hurt, the injury did not occur while Morales was aboard the GARIJAK. Collins testified that Captain Sanchez, Alvarado, and Castillo all told him that they did not see or hear about Morales's fall. He also testified that when Morales had come into the office to pick up his paychecks before making his claim for maintenance and cure, he asked Morales his name and how he was doing, and that Morales identified himself, indicated he was fine, and did not mention an accident, whereupon he handed Morales his checks. Morales, however, denied seeing Collins when he picked up the checks. In refusing to pay maintenance and cure, Collins relied not only on Morales's professions of well-being, but also on the fact that Morales did not seek medical attention until a few weeks after the alleged accident.

Morales presented the deposition testimony of Dr. Rick William Bassett, who testified about the nature of Morales's broken wrist and other injuries and the expected course of treatment. The parties stipulated that "$15 a day is an adequate and reasonable maintenance rate."

On December 17, 1985, the jury concluded that Garijak was not negligent; that the GARIJAK was not unseaworthy; that Morales was entitled to maintenance and cure; that he would reach maximum cure "Minimum June 30, 1986[,] Maximum December 31, 1986;" that Garijak wrongfully and arbitrarily refused to pay maintenance and cure benefits; that $50,000 would fairly compensate Morales for "damages he suffered, including worsening of his medical condition, and attorney's fees for the wrongful and arbitrary failure to pay maintenance and cure;" and that Garijak's refusal to pay maintenance and cure was not "wanton and intentional or willful and callous."

The district court entered judgment on the jury verdict. The court awarded Morales $50,000 with interest from September 1, 1983 until paid; maintenance at the rate of $15 per day from July 28, 1983, until June 30, 1986, or, if Morales did not reach maximum cure by June 30, 1986, $15 per day until Morales reached maximum cure or until December 31, 1986, whichever came first; and reasonable medical expenses for repairing his wrist until he reached maximum cure or until December 31, 1986, whichever came first.

## II.

When a seaman becomes ill or injured while in the service of his ship, the shipowner must pay him maintenance and cure, whether or not the shipowner was at fault or the ship unseaworthy.[1] This obligation includes paying a subsistence allowance, reimbursing medical expenses actually incurred, and taking all reasonable steps to ensure that the seaman receives proper care and treatment.[2]

Upon receiving a claim for maintenance and cure, the shipowner need not immediately commence payments; he is entitled to investigate and require corroboration of the claim.[3] If, after investigating, the shipowner unreasonably rejects the claim, when in fact the seaman is due maintenance and cure, the owner becomes liable not only for the maintenance and cure payments, but also for compensatory damages. These are the damages that have resulted from the failure to pay, such as the aggravation of the seaman's condition, determined by the usual principles applied in tort cases to measure compensatory damages.[4]

■■■■ If the shipowner, in failing to pay maintenance and cure, has not only been unreasonable but has been more egregiously at fault, he will be liable for punitive damages and attorney's fees. We have described this higher degree of fault in such terms as callous and recalcitrant, arbitrary and capricious, or willful, callous and persistent.[5] Thus, there is an escalating scale of liability: a shipowner who is in fact liable for maintenance and cure, but who has been reasonable in denying liability, may be held liable only for the amount of maintenance and cure. If the shipowner has refused to pay without a reasonable defense, he becomes liable in addition for compensatory damages. If the owner not only lacks a reasonable defense but has exhibited callousness and indifference to the seaman's plight, he becomes liable for punitive damages and attorney's fees as well.

1. *Gaspard v. Taylor Diving & Salvage Co.*, 649 F.2d 372, 374 n. 3 (5th Cir.1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1252, 71 L.Ed.2d 445 (1982).

2. *Id.* at 375.

3. *McWilliams v. Texaco, Inc.*, 781 F.2d 514, 518–20 (5th Cir.1986).

4. *Vaughan v. Atkinson*, 369 U.S. 527, 530, 82 S.Ct. 997, 999, 8 L.Ed.2d 88 (1962); *Cortes v. Baltimore Insular Line, Inc.*, 287 U.S. 367, 371, 53 S.Ct. 173, 174, 77 L.Ed. 368 (1932); *Gaspard*, 649 F.2d at 375.

5. *McWilliams*, 781 F.2d at 519; *Gaspard*, 649 F.2d at 375.

On at least one occasion, this court has suggested that the standard of liability for punitive damages or attorney's fees also applies to compensatory damages.[6] And, while neither party has raised the issue, we note that the district court, which used pattern jury instructions, also incorrectly described the standard for compensatory damages in terms of the standard for punitive damages or attorney's fees. As this court has observed previously, the pattern jury instructions used by Fifth Circuit district courts mischaracterize the standard of fault for compensatory damages as arbitrary and capricious or callous behavior instead of unreasonable behavior.[7] A misreading of the Supreme Court's decision in *Vaughan v. Atkinson*[8] apparently has caused the confusion.[9]

■ Adopting the higher standard of fault for compensatory damages claims would require not only a misapplication of decisions by the Supreme Court, this circuit, and other circuits,[10] but also an outcome at odds with general legal doctrine. Neither in tort nor in contract law must a plaintiff prove arbitrary and capricious or callous behavior in order to recover reasonably forseeable damages that have resulted from the breach of a duty owed him;[11] to require such a showing would provide insufficient incentive for individuals to fulfill their legal obligations. Because of the incorrect instructions, Morales was required to bear too heavy a burden in order to recover compensatory damages. In this case, the error was harmless because, in finding that Garijak acted arbitrarily, the jury necessarily indicated that it believed Garijak had acted unreasonably.

■ The jury found that Morales had suffered his injury while aboard the GARIJAK and therefore was entitled to maintenance and cure payments. On appeal, Garijak concedes Morales's entitlement to maintenance and cure but challenges the length of time during which they must be paid. Because Morales had received maintenance aboard the GARIJAK from the date of injury, July 28, 1983, until August 10, 1983, the date he left the GARIJAK, Garijak correctly asserts that the jury's award of maintenance payments must commence as of August 10.

■ Garijak also contends that there is insufficient evidence to justify maintenance and cure payments beyond December 17, 1985. We disagree. The entitlement to maintenance and cure ends when the seaman reaches the date of maximum possible cure, the point at which further treatment will probably not improve his condition.[12] An award for future maintenance and cure is justified when supported by a physician's testimony.[13] Dr. Bassett testified that Morales had suffered a fracture of his right wrist leaving him with a painful wrist that is capable of only limited motion and function. In order to repair the wrist, Dr. Bassett would have to open the wrist and remove all scar tissue, fill in the fracture gap with a bone graft, secure the graft to the wrist bone with special pins or screws, and use an electric bone stimulator to enhance the healing process. The full period of recuperation and rehabilitation would take five months. If the surgery proved to be unsuccessful, Dr. Bassett would repeat the procedure. If it failed a second time, he would fuse the wrist. In the worst

---

**6.** *Ober v. Penrod Drilling Co.,* 726 F.2d 1035, 1037 n. 4 (5th Cir.1984) (per curiam).

**7.** *Gaspard,* 649 F.2d at 375 n. 4.

**8.** 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962).

**9.** *Harper v. Zapata Off-Shore Co.,* 563 F.Supp. 576, 580–81 (E.D.La.1983), *rev'd on other grounds,* 741 F.2d 87 (5th Cir.1984).

**10.** *Vaughan,* 369 U.S. at 530, 82 S.Ct. at 999; *Cortes,* 287 U.S. at 371, 53 S.Ct. at 174; *Gaspard,* 649 F.2d at 375; *Kraljic v. Berman Enters., Inc.,*

575 F.2d 412, 413 (2d Cir.1978); *Neville v. American Barge Line Co.,* 276 F.2d 117, 120 (3d Cir. 1960). *See also* G. Gilmore & C. Black, The Law of Admiralty § 6–13, at 311 (2d ed. 1975).

**11.** Restatement (Second) of Torts § 910 (1977); Restatement (Second) of Contracts § 346 (1979).

**12.** *Springborn v. American Commercial Barge Lines, Inc.,* 767 F.2d 89, 95 (5th Cir.1985).

**13.** *Lirette v. K & B Boat Rentals, Inc.,* 579 F.2d 968, 969 (5th Cir.1978).

case, treatment would require one and a half years of treatment and recuperation.

■ Apparently relying on Dr. Bassett's uncontroverted testimony when it reached its verdict in December, 1985, the jury indicated its belief that Morales had not attained maximum cure. He still has not received the medical treatment to which the jury found him entitled. Consequently, Garijak is still under a duty to pay daily maintenance as well as the medical expenses that Morales will reasonably incur in obtaining treatment for his broken wrist. It is impossible to fix a precise date when Morales will reach maximum cure. Accordingly, we modify the judgment in a manner similar to the approach this court took in *Lirette v. K & B Boat Rentals, Inc.:*[14] Garijak shall continue to pay maintenance and cure until, in the opinion of Morales's treating physician, additional treatment will probably not improve the condition of Morales's wrist. At that time, Garijak may discontinue maintenance and cure payments, subject to Morales's right, however, to seek a resumption of payments if he can show adequate cause for such action.

Garijak also challenges the jury's finding that it acted "wrongfully and arbitrarily" in failing to pay maintenance and cure and therefore asks us to vacate the lump-sum award made to cover both compensatory damages and attorney's fees. That verdict must, of course, be upheld if supported by substantial evidence.[15] Consequently, if substantial evidence indicated that Garijak acted unreasonably, the award of compensatory damages must stand. If substantial evidence indicated that Garijak also acted arbitrarily, the award of attorney's fees must stand.

■ A failure to pay maintenance and cure due an injured seaman is reasonable if a diligent investigation indicates that the seaman's claim is not legitimate[16] or if the seaman does not submit medical reports to document his claim.[17] The evidence concerning the propriety of Garijak's refusal to pay maintenance and cure is in conflict. Morales testified that all of his co-workers, including the captain, were told of the alleged accident. Collins, on the other hand, testified that, when he asked each of the three co-workers about the accident, all denied knowledge of its occurrence. Only one of the co-workers, Alvarado, testified at trial, and he stated that he told Collins's lawyer that he was aware of the accident. In large part, then, the verdict turned on the jury's assessment of witness credibility, an assessment to which we defer on appeal.[18] The jurors were entitled to believe the statements of Morales and Alvarado and to disbelieve Collins. By crediting the testimony of Morales and Alvarado, the jury was entitled to conclude that Collins should have been able to corroborate Morales's claim after a diligent investigation and therefore that he acted unreasonably in not paying maintenance and cure.

■ There is not substantial evidence, however, to support the jury's finding that Collins acted arbitrarily, callously, or capriciously in not paying the maintenance and cure. Courts have found such egregious conduct when the shipowner failed to conduct any investigation into a seaman's claim,[19] withheld payments despite discovering through an investigation that the payments were due,[20] rejected a documented claim because the seaman did not consult the owner before seeking treatment for his injury and because the seaman had filed suit,[21] or withheld payments on a pretextual basis or because the seaman reject-

---

**14.** *Id.* at 970 (5th Cir.1978).

**15.** *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc).

**16.** *McWilliams,* 781 F.2d at 518–20.

**17.** *Id.* at 519.

**18.** *Gairola v. Virginia Dep't of Gen. Servs.,* 753 F.2d 1281, 1285 (4th Cir.1985).

**19.** *Vaughan,* 369 U.S. at 530–31, 82 S.Ct. at 999.

**20.** *Parker v. Texaco, Inc.,* 549 F.Supp. 71, 77 (E.D.La.1982).

**21.** *Holmes v. J. Ray McDermott & Co.,* 734 F.2d 1110, 1119 (5th Cir.1984).

ed a settlement offer.[22] At most, Morales's evidence established that Garijak's employees or agents were aware of the accident. Other than Collins's testimony, however, there was no evidence regarding the extent of Collins's investigation or what he was told about the accident when he conducted his investigation. Consequently, if the jury did not believe Collins, it could only speculate about how much information he actually had.

In sum, the award of compensatory damages must stand but the award of attorney's fees cannot. We are unable, however, to determine what part of the $50,000 jury award represented compensatory damages and what part represented attorney's fees because jury interrogatory sixteen asked for and elicited a single figure for the sum of both awards. Moreover, we are unable to reconstruct the jury's calculations in reaching the $50,000 total. Morales requested only $25,000 for compensatory damages and attorney's fees. Also, the only evidence Morales introduced on attorney's fees was his attorney's testimony that Morales had agreed to pay a 40 percent contingency fee. While the existence of a contingency fee arrangement is a factor in the attorney's fees calculation, an attorney's fees award is based primarily on the "lodestar" product of hours worked and the customary hourly fee.[23] In order to arrive at a figure for compensatory damages, then, we must remand this case for a redetermination of that award.

### III.

Garijak requests reversal also on the basis that, in answering the special interrogatories, the jury inconsistently found that Garijak acted wrongfully and arbitrarily, and was therefore liable for compensatory damages and attorney's fees, but did not act wantonly and intentionally or willfully and callously, and was therefore not liable for punitive damages. Any inconsistency suggested by the form of the interrogatories is resolved by review of the entire jury instruction.[24] The district court told the jury that it should award punitive damages not only if it found that Garijak acted wantonly or callously but also if it believed that Garijak should be punished as an example to others.

### IV.

Although the maintenance and cure claim was tried to the jury, the factual question of entitlement to pre-judgment interest was not submitted to the jury. Consequently, the district court did not have authority to award such interest,[25] and its award must therefore be vacated. We must also modify the award of maintenance so that the owner is not held liable to pay maintenance for the period during which Morales remained aboard the vessel and was furnished board, July 28 until August 10, 1983.

For these reasons, we ORDER Garijak to pay maintenance of $15 per day from August 10, 1983 and the reasonable medical expenses incurred by Morales for the treatment of his broken wrist until Morales has reached maximum cure, VACATE the awards of attorney's fees and pre-judgment interest, and REMAND for determination of compensatory damages.

GARZA, Circuit Judge, concurring specially:

I write separately because I fear that the owner of the GARIJAK, Julius Collins, did not get a fair trial on the issue of whether or not he acted as a reasonable man would have acted based on the information that was available to him. Collins' defense was that he did not pay maintenance and cure because he did not believe that Morales had been injured while on board the GARIJAK. The fact that Morales was due maintenance

---

**22.** *Robinson v. Pocahontas, Inc.,* 477 F.2d 1048, 1050, 1052 (1st Cir.1973).

**23.** *Graves v. Barnes,* 700 F.2d 220, 222 (5th Cir. 1983).

**24.** *Alverez v. J. Ray McDermott & Co.,* 674 F.2d 1037, 1040 (5th Cir.1982).

**25.** *Havis v. Petroleum Helicopters, Inc.,* 664 F.2d 54 (5th Cir.1981).

and cure has been foreclosed by the jury finding that he was injured while on board the GARIJAK. The jury's verdict in this regard was apparently reached on his testimony that that is where he slipped and hurt his wrist.

As explained by the majority, the use of the pattern jury instructions by the court below mischaracterized the standard of fault for compensatory damages "as arbitrary and capricious or callous behavior instead of unreasonable behavior."

As noted by the majority opinion, Julius Collins, the owner, testified that the first he knew of a claim for maintenance and cure by Morales was when he received a letter from an attorney many days after the end of the voyage. The record shows that Collins testified that a few days after the voyage Morales came to the office of the GARIJAK to get his check. Collins personally gave the check to Morales and observed that nothing seemed to be wrong with him. Morales told him he was fine and made no claim of being hurt while aboard the vessel. Morales disputed having received his check from Collins, stating that he got it from a secretary in the office. However, he did admit that he never told the secretary or anybody else there of having been injured on the vessel.

Upon receipt of the letter from Morales' attorney, Collins testified that he talked to the captain and two of the crew members and that they all told him that they knew nothing about Morales having fallen or hurting his wrist while working aboard the GARIJAK. Collins knew that Morales had stayed on board the vessel for many days after the alleged injury and had continued working. But, as the majority points out, the jury could disbelieve what Collins testified to.

The district court in his charge to the jury told them:

> You may only award damages for any failure of the employer to pay maintenance and cure to the plaintiff if, on the basis of all the facts and opportunities known to and available to the defendant during the time in question, the refusal to pay maintenance and cure was arbitrary and capricious, or in callous disregard of the plaintiff's claim.

Therefore, the question of whether Collins acted reasonably was never squarely put to the jury. The majority opinion characterizes the failure of the court below to submit the question of Collins' reasonableness in not paying the claim for maintenance and cure as harmless error because of the higher burden that was placed on Morales.

I believe that a jury would be more apt to find for an owner if the sole question put to them was whether the owner had acted reasonably, than to burden them with deciding whether the owner's actions were arbitrary and capricious or in callous disregard of the plaintiff's claim. The attorneys for appellant Collins did not object to the court's charge in any manner and that forecloses our being able to do anything in this regard.

However, I am writing separately because I would follow the teachings of our opinion in *Gaspard v. Taylor Diving & Salvage Co.*, 649 F.2d 372 (5th Cir.1981).

I believe that where a shipowner has failed to pay maintenance and cure on the basis that he does not believe that the claimant was injured while a seaman on board his vessel, the case should be submitted to a jury in the following manner: 1) whether or not the claimant was actually injured while in the service of the vessel; 2) if the jury finds that he was, the next question should be whether the jury finds that the owner acted reasonably in denying him maintenance and cure because his investigation of the claim indicated that the seaman was not injured on his vessel and therefore he was not responsible for maintenance and cure.

If the jury says that he acted reasonably, the injured seaman is then only entitled to his maintenance and cure. If the jury finds that the owner did not act reasonably, then the jury would reach the question of compensatory damages, and the next inquiry would be whether the unreasonable failure to provide maintenance and cure aggravated the seaman's condition, and if so, the shipowner is then liable not only for the increased medical expenses and mainte-

nance that may become necessary, but also for full tort damages that result. The next inquiry would be whether the shipowner, in failing to provide maintenance and cure, has been callous or recalcitrant or arbitrary and capricious. A finding by the jury that he acted in that manner would also allow the jury to answer a question with regard to reasonable attorney's fees which could be recovered.

My concern is that a shipowner, who after receiving a claim for maintenance and cure, fully investigates the claim and determines from all the facts which he discovered that the claim is not a valid claim, should be allowed to have a jury determine the reasonableness of his action in denying the claim—not that the seaman would not be entitled to maintenance and cure if a jury finds that his claim was valid, but to keep a shipowner from having to pay anything other than maintenance and cure.