722 So.2d 399 (1998)
Roger Lee SPELL, Plaintiff-Appellee-2nd Appellant
v.
AMERICAN OILFIELD DIVERS, INC., Defendant-1st Appellant.
No. 98-498.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1998.
*400 Raleigh Newman, Lake Charles, for Roger Lee Spell.
Ralph Edward Kraft, Lafayette, for American Oilfield Divers, Inc.
Before YELVERTON, THIBODEAUX and SAUNDERS, JJ.
YELVERTON, J.
Roger Spell sued his employer, American Oilfield Divers, for Jones Act negligence, unseaworthiness, maintenance and cure, and punitive damages and attorney's fees for failure to pay maintenance and cure. After a trial, the court denied Spell's claims for negligence and unseaworthiness. It then reinstated maintenance and cure benefits and awarded attorney's fees to Spell in the amount of $15,000.
American appealed the trial court's award of $15,000 in attorney's fees. Spell also appealed the trial court judgment. Spell asks this court to increase the award of attorney's fees to $31,250. Spell further claims that the trial court erred in failing to find American liable for Jones Act negligence and unseaworthiness.

FACTS
Spell was employed as an oiler by American. At the time of the accident he was working aboard the M/V AMERICAN VICTORY. Spell boarded the vessel on Monday, March 7, 1994. At that time the vessel was moored at the Port of Vermilion getting ready for a coast guard inspection.
On March 9, 1994, Spell was involved in an accident while he was assisting Captain Phillip Miller remove an unnecessary nipple and valve below the fire main in the engine room. Miller successfully removed the valve by himself. However when he tried to remove the nipple, the whole fire main assembly turned. Spell then attempted to assist Miller in removing the nipple. Miller held backup while Spell attempted to break the nipple loose. Spell placed a pipe wrench on the nipple itself, but the pipe wrench was loose so he readjusted it. When Spell began to pull on the pipe wrench, it slipped from the nipple. Spell fell backwards and hit his lower back on a step-up. Spell began experiencing pain in his lower back which worsened that night.
Spell remained on board until Friday when he went to the emergency room in Abbeville. At that time, he was diagnosed with a contusion in the lumbar area. He then went home and never returned to work for American.
*401 Still experiencing pain in his lower back and left leg, Spell was initially seen by Dr. Ray Boyer. However, Spell testified that the trip to Lafayette was too hard on him so he then saw a doctor closer to home, Dr. Greg Savoy in Mamou. Dr. Savoy referred Spell to an orthopedic surgeon, Dr. Stephen Nason.
Dr. Nason first saw Spell on April 22, 1994. Spell brought x-rays and a CAT scan with him which revealed some abnormalities on the L5 vertebra on the left side. This is the area that was causing Spell pain. Dr. Nason also noticed that Spell had scoliosis of the spine in the thoracic area. Dr. Nason saw Spell again on May 20, and he took some more x-rays. Again he saw the same defect. He classified it as a complete defect in the pars on the left side.
Dr. Nason ordered a bone scan and saw Spell on June 10. The bone scan was normal which indicated that the defect was developmental rather than a traumatic defect. Dr. Nason noted that Spell's pain was mechanically initiated because any activity that increased stress on the lower back, particularly motion in the lower back, aggravated his symptoms. Dr. Nason also ordered an MRI which did not reveal any disc herniation. Dr. Nason last saw Spell on September 9, 1994, and Spell was still complaining of pain.
Dr. Nason opined that the accident aggravated his preexisting back problem and caused him pain. Dr. Nason testified that Spell could not go back to work as an oiler and that any work he could perform would be basically of a sedentary nature. Dr. Nason did not feel that there was an indication to do surgery at that time. He testified that the problem in Spell's back was not likely to heal, but felt that the symptoms would lessen with time.
Spell saw another orthopedic surgeon, Dr. Louis Blanda, on three occasions in November and December of 1994 and January 1995. Dr. Blanda noted a marked amount of spasm in the lumbar area and atrophy in the left calf. Dr. Blanda reviewed diagnostic tests and commented that the tomograms were suspicious but not conclusive of a pars defect. Dr. Blanda told Spell on his last visit that he did not feel that he had anything surgical and that he should try to return to normal activity. As of Spell's last visit on January 31, 1995, Dr. Blanda discharged him to return to normal activity. Dr. Blanda noted that surgery was not necessary. As a result of Dr. Blanda's recommendation, American terminated maintenance and cure on February 8, 1995.
Subsequently, on the recommendation of his attorney, Spell was seen by another orthopedic surgeon, Dr. George Schneider on March 2, 1995. Dr. Schneider saw Spell about nine times until his last visit on August 3, 1995. Dr. Schneider reviewed the previous x-rays and noted the left pars defect at L5. Dr. Schneider then got some additional x-rays. These x-rays further confirmed the presence of the pars defect on the left side. In examining Spell, Dr. Schneider recognized that Spell's responses indicated that he was having a genuine problem.
Dr. Schneider testified that various motions, like twisting, bending, and lifting, can promote instability in this area and play a part in the patient being symptomatic. Dr. Schneider also indicated that the defect might be causing some irritation of the nerve in that area. Dr. Schneider recommended a stabilization procedure that fuses the back in that level to provide stability. However, at the time Dr. Schneider was treating Spell, he no longer performed surgeries. Also, due to his own illness, Dr. Schneider became unable to treat Spell. At that time Spell began seeing Dr. Clark Gunderson.
Dr. Gunderson saw Spell on two occasions, last seeing him on March 6, 1996. Dr. Gunderson also found that Spell had an unusual condition which he classified as a sympathetic unilateral spondylolysis, also known as a pars defect, on the left side. He indicated that the incident in 1994 did not cause this defect. Dr. Gunderson testified that most people with unilateral spondylolysis never become symptomatic. However, in Spell's case the accident either made it symptomatic or aggravated it. Dr. Gunderson said it is rare for people with this condition to become symptomatic but that he has seen it in several cases during his practice.
*402 Like Dr. Schneider, Dr. Gunderson recommended a fusion. Dr. Gunderson stated that Spell could either live with it or have the surgery. Without surgery or a significant amount of pain, Dr. Gunderson would release Spell to light-duty work. If Spell had the surgery, he still would be released to only light-duty work.
The last doctor to see Spell was Dr. James McDaniel, who saw him one time on June 16, 1997, for an independent medical examination. He basically found that Spell was exaggerating his symptoms and did not see that Spell even had a defect on the left side. However, Dr. McDaniel did agree that it is difficult to diagnose a pars defect because some films may show it and others do not show it.
Spell sued American as his employer for Jones Act negligence and for unseaworthiness because American was also the owner of the vessel. He additionally asked that maintenance and cure be reinstated. Spell also sought punitive damages and attorney's fees for the termination of maintenance and cure. The trial court found that Spell was entitled to reinstatement of maintenance and cure and awarded $15,000 in attorney's fees. The trial court denied Spell's claims for Jones Act negligence and unseaworthiness. Both parties appealed this judgment.

STANDARD OF REVIEW
Spell asserted claims for both Jones Act negligence and unseaworthiness. He claims the trial court erred in not finding American liable under both these theories. The appropriate standard of review for both of these theories is the manifest error, clearly wrong standard. Foster v. Destin Trading Corp., on rehearing, 96-0803 (La.10/21/97), 700 So.2d 199.
Spell claims that the pipe wrench he was using had worn teeth which caused it to slip and, therefore, caused him to lose his balance. Spell also complains that the deck plates were not secure and that the deck plate he stepped back on shifted, causing him to further lose his balance. Spell claims that these two conditions caused him to fall and hit his back. These contentions form the basis for Spell's claims of Jones Act negligence and unseaworthiness against American.

Unseaworthiness
The owner of a vessel has a duty to furnish a seaworthy vessel. This duty is absolute and nondelegable. Florida Fuels, Inc. v. Citgo Petroleum Corp., 6 F.3d 330, 332 (5th Cir.1993). It extends to a defective condition of the ship, its equipment, or appurtenances. Phillips v. Western Co. of North America, 953 F.2d 923, 928 (5th Cir.1992). A ship's equipment and appurtenances include most objects and things on or attached to the vessel regardless of whether the item belongs to the ship or is brought aboard by a third party. See 1 Schoenbaum, supra, § 6-25, at 333-34.
A breach of the duty of seaworthiness gives rise to a claim for general damages. The plaintiff bears the burden of proving that "the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1354 (5th Cir.1988).
The test for determining unseaworthiness is one of reasonable fitness. The vessel, its equipment, and appurtenances need not be perfect, but all must be reasonably fit for their intended use. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960).
Foster, 700 So.2d at 209 (Footnote omitted).

Jones Act Negligence
Spell contends that the trial court wrongfully construed the recent case of Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5 Cir.1997). Spell claims that Gautreaux holds that if there is negligence that plays any part, no matter how slight, in causing the accident, then the employer is liable. We disagree. We again quote the Louisiana Supreme Court from Foster, 700 So.2d at 208, which discussed a Jones Act negligence claim and the effect of Gautreaux as follows:
The Jones Act allows an injured seaman to bring a negligence suit against his employer. *403 46 U.S.C.App. § 688 (1994). The employer's potential liability extends to all personal injuries arising during the course of the seaman's employment, but proof of negligence is essential to recovery. See id. Such negligence may arise in many ways including the failure to use reasonable care to provide a seaman with a safe place to work, the existence of a dangerous condition on or about the vessel, or any other breach of the duty of care. See Davis v. Hill Engineering, Inc., 549 F.2d 314, 329 (5th Cir.1977); 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 6-21, at 312 (2d ed. 1994). The duty of care owed by an employer under the Jones Act is that of ordinary prudence, namely the duty to take reasonable care under the circumstances. Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 335-36 (5th Cir.1997). The seaman bears the evidentiary burden of proving that a breach of the duty owed by the employer was a cause of his injuries. However, a seaman need only present "slight evidence" that his employer's negligence caused his injuries in order to reach the jury or to be sustained upon appellate review. Id. at 334-35.
Gautreaux, 107 F.3d at 339, specifically overruled cases which attributed to "Jones Act employers a higher duty of care than that required under ordinary negligence." All that is required of employers is that they exercise ordinary prudence under the circumstances. However, Gautreaux further held that the employee need only establish the employer's negligence with the "slightest" evidence. With these principles in mind, we now address Spell's claims regarding the deck plates and pipe wrench.

PIPE WRENCH
Spell claims that American was negligent and the vessel was unseaworthy because he was provided with a pipe wrench that was not in suitable working condition. As stated by Spell in brief, everyone agrees that the pipe wrench slipped. The question is whether or not the pipe wrench slipped because it was in bad condition or because it was improperly adjusted. Spell specifically claims that the pipe wrench had worn teeth. A problem with Spell's proof was that the original pipe wrench was not available, and there were no pictures of it. Miller testified that he did not think about preserving the wrench.
The pipe wrench used by Spell was first used by Miller to remove the valve. When Miller used the pipe wrench, he had no problem. When Spell initially placed the pipe wrench on the nipple, it did not feel right so Spell readjusted it. He then began to pull on the pipe wrench, at which time it slipped off, and he fell backwards.
Spell claims that the teeth were worn on the pipe wrench which caused it to slip. In support of this assertion Spell introduced pictures of a pipe wrench with alleged worn teeth that was found in the workbench of the engine room when Spell and his attorney inspected the vessel. We agree with the trial court that this evidence was insignificant since all it proved was that a worn pipe wrench was found on the vessel more than three years after the accident.
Miller testified that the pipe wrench used by Spell was only about a year old at the time of the accident, explaining that American bought new tools when it bought the vessel in the summer of 1993. We are aware of Spell's expert's testimony that if the teeth on a pipe wrench were worn, it would not "bite." However, American's expert testified that a good pipe wrench could slip when it is not properly adjusted.
Miller was able to get a "bite" when he removed the valve. Also, Spell admitted that he did not inspect the pipe wrench so he was not sure how the teeth looked on the wrench. Spell further admitted that the pipe wrench he was using on the day of the accident looked better than the one in the pictures. We can find no clear error in the trial court's finding that the pipe wrench supplied by American was fit for its intended use.

DECK PLATES
Spell claims that American was negligent and that the vessel was unseaworthy because the deck plates were not secure and were movable. Spell stated that, once he started falling backwards, he tried to regain his balance *404 but was unable to do so because the deck plate he stepped on shifted and caused him to lose his balance. The trial court found that Spell did not prove by a preponderance of the evidence that the deck plate moved at all.
Spell introduced the testimony of Commander David Cole, a marine consultant, in support of his testimony that the deck plates in the engine room were not properly secured. Cole testified that there were three ways to secure deck plates: (1) they can be bolted to the underlying structure; (2) they can be fitted into angle iron bracing; and (3) they can be fitted against one another to prevent shifting. Cole never conducted an on-site investigation of the area where the accident occurred but examined pictures of the deck plate that was alleged to have shifted. He testified that the picture indicated that the deck plate was free to shift in two directions. He opined that the deck plate could shift and was not secure.
Arthur Sargent, a naval architect and marine engineer, testified on behalf of American. He inspected the area where Spell was injured. The deck plates on the vessel were placed on top of angle iron supports. Sargent stated that bolts were not needed on these deck plates because they stayed in an interlocking position similar to a puzzle. He testified that he tried to get the floor plates to move but could not. In fact he stated that his rubber-soled feet slipped but the deck plate did not move. In reviewing the photograph that Spell introduced as evidence that the deck plate would not stay locked in position, Sargent testified that it appeared the plate had been lifted up and placed in that position. Also, both Sargent and Miller testified that there was a retaining clip to hold this plate in place. Spell testified that his attorney pushed on the plate and it slid up.
Miller explained that the deck plates were not hinged or bolted because there needed to be access to the bilge underneath. He further stated that during the course of the events he was looking over his left shoulder at Spell and saw him fall. He did not see the deck plates move. Miller testified that he would have had to reposition deck plates before continuing work if they had moved, and he did not have to reposition any deck plates after Spell fell.
We cannot discern clear error in the trial court's finding that Spell failed to prove that the deck plates shifted. Thus, we also agree with the trial court that Spell failed in proving his Jones Act negligence claims and unseaworthiness claims.

ATTORNEY'S FEES
The trial court granted Spell past maintenance and cure and reinstated maintenance and cure. This ruling is not appealed. However, the trial court also awarded attorney's fees in the amount of $15,000 to Spell because American was lax in investigating his claim. American argues that Spell is not entitled to attorney's fees because its conduct was not egregious under the circumstances. It further alleges that Spell failed to introduce any evidence to substantiate the amount of attorney's fees which might be due. Spell alleges on appeal that he is entitled to an increase of attorney's fees.
In Morales v. Garijak, Inc., 829 F.2d 1355, 1358 (5 Cir.1987) (footnote omitted), the Fifth Circuit discussed the type of conduct required of a shipowner in order to entitle the seaman to an award of attorney's fees as follows[1]:
If the shipowner, in failing to pay maintenance and cure, has not only been unreasonable but has been more egregiously at fault, he will be liable for punitive damages and attorney's fees. We have described this higher degree of fault in such terms as callous and recalcitrant, arbitrary and capricious, or willful, callous and persistent. Thus, there is an escalating scale of liability: a shipowner who is in fact liable for maintenance and cure, but who has been *405 reasonable in denying liability, may be held liable only for the amount of maintenance and cure. If the shipowner has refused to pay without a reasonable defense, he becomes liable in addition for compensatory damages. If the owner not only lacks a reasonable defense but has exhibited callousness and indifference to the seaman's plight, he becomes liable for punitive damages and attorney's fees as well.
In this case we agree with the trial court's findings that American was lax in investigating the claim. Although Dr. Blanda released Spell to return to normal activity, Spell was subsequently seen by several other doctors who found that the pars defect was causing movement problems for Spell. These doctors opined that Spell could perform light-duty work at the most and might even require a surgical procedure to alleviate the symptoms. It is obvious that once American got a doctor's opinion releasing Spell to go back to normal activity, it was not going to rely on any other information it received regardless of what that information was. American's claims adjuster admitted that the attorney told him to ignore the subsequent information and rely on Dr. Blanda's report. We find that the conduct of American was recalcitrant to say the least. Spell is entitled to an award of attorney's fees.
In Reed v. Seacoast Products, Inc., 458 So.2d 971 (La.App. 3 Cir.1984), this court reversed an award of attorney's fees for the attorney's work on a maintenance and cure claim because the plaintiff failed to produce any evidence with regard to an appropriate amount for attorney's fees. We applied federal law and relied on Holmes v. J. Ray McDermott & Company, 734 F.2d 1110 (5 Cir.1984). See also Huff v. Compass Nav., Inc., 522 So.2d 641 (La.App. 4 Cir.), writ denied, 526 So.2d 797 (La.1988).
We realize that Holmes was overruled by Guevara, 59 F.3d 1496, but only to the extent that the availability of punitive damages in maintenance and cure cases was no longer well-founded. Guevara recognized that the recovery of attorney's fees in maintenance and cure cases was still available as long as the proper showing of egregious fault is made. This means that a plaintiff is still required to produce evidence with regard to an appropriate amount for attorney's fees.
We have also examined a more recent case, albeit from another jurisdiction, on the issue, Kloster Cruise Limited v. De Sousa, 677 So.2d 50 (Fla. 3d DCA 1996). Kloster Cruise Limited followed Holmes after it had been overruled by Guevara to the extent that a seaman is still required to present evidence relating to the appropriate amount of attorney's fees. However, the court in Kloster Cruise Limited remanded the case for a determination of the amount of attorney's fees following presentation of evidence on this issue. We agree with the reasoning of that court that presenting the issue of the amount of fees to a trier of fact that is deliberating the other issues in the case is impractical. Once a trier of fact determines that attorney's fees are appropriate, then the trier of fact can receive evidence as to the amount of attorney's fees and deliberate that issue separately. That was not done in this case, and no evidence of attorney's fees was submitted. Depriving Spell of all attorney's fees under the circumstances would be unfair. We will remand for that purpose.
For the above reasons, the judgment of the trial court in awarding $15,000 in attorney's fees to Spell is reversed. However, the case is remanded for the presentation of evidence and determination of appropriate attorney's fees. In all other respects the judgment of the trial court is affirmed. Costs of this appeal are assessed equally to Roger Spell and American Oilfield Divers, Inc.
REVERSED IN PART; AFFIRMED IN PART; AND REMANDED.
NOTES
[1] Applying the holding in Guevara v. Maritime Overseas Corporation, 59 F.3d 1496 (5 Cir.1995), cert. denied, 516 U.S. 1046, 116 S.Ct. 706, 133 L.Ed.2d 662 (1996), that punitive damages are no longer available in maintenance and cure cases, the trial court granted American's partial motion for summary judgment on the issue of punitive damages. This ruling was not appealed; therefore, our opinion does not deal with the issue of punitive damages.