# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-147

ADRIENNE STERMER

VERSUS

ARCHER-DANIELS-MIDLAND COMPANY
AND AMERICAN RIVER TRANSPORTATION COMPANY

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT,
PARISH OF ACADIA, NO. 08-6424
HONORABLE ELLIS J. DAIGLE, DISRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ELIZABETH A. PICKETT
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AFFIRMED IN PART; REVERSED IN PART; AND
REMANDED WITH INSTRUCTIONS.**

**Lawrence N. Curtis**
**Lawrence N. Curtis, LTD.**
**(A Professional Law Corporation)**
**300 Rue Beauregard, Bldg. C.**
**Post Office Box 80247**
**Lafayette, Louisiana 70598-0247**
**(337) 235-1825**
**COUNSEL FOR PLAINTIFF-APPELLANT:**
**Adrienne Stermer**

**Koerner Law Firm**
**Louis R. Koerner, Jr.**
**Post Office Box 4297**
**Houma, Louisiana  70361**
**(985) 580-0350**
**COUNSEL FOR PLAINTIFF-APPELLANT:**
**Adrienne Stermer**

**Georges M. Legrand**
**Adam P. Sanderson**
**Mouledoux, Bland, Legrand & Brackette LLC**
**701 Poydras Street, Suite 4250**
**New Orleans, Louisiana 70139**
**(504) 595-3000**
**COUNSEL FOR DEFENDANTS-APPELLANTS:**
**American River Transportation Company**
**Agrinational Insurance Company**

**PICKETT, Judge.**

A maritime employer appeals the trial court's awards of penalties and attorney fees to a seaman for the employer's failure to pay maintenance and cure for almost two and one-half years after the seaman was injured. Finding no manifest error in the trial court's determination that the employer's failure to pay maintenance and cure more promptly was arbitrary and capricious, we affirm the award of penalties in the amount of $300,000.00 and the finding that an award of attorney fees is warranted, but reverse the award of $150,000.00 in attorney fees and remand to the trial court to receive evidence on the issue of attorney fees. We award $10,000.00 in attorney fees for work performed on appeal.

## FACTS

Adrienne Stermer began working for American River Transportation Company (ARTCO) in November 2005 as a cook on motor vessels ARTCO operated on the Mississippi River transporting barges between New Orleans and St. Louis, Missouri. Ms. Stermer boarded the M/V COOPERATIVE ENTERPRISE on September 21, 2007. She performed her usual duties on the vessel twenty-four hours a day, seven days a week until October 18, 2007, when she left the vessel and returned home due to injuries she claimed to have suffered on October 9, 2007. By letter dated October 19, ARTCO notified Ms. Stermer that her "recent complaints did not manifest itself [sic] in the service of the vessel" and that it would not make voluntary payments for maintenance and cure. Then, by letter dated October 22, 2002, ARTCO notified Ms. Stermer that it had concluded its investigation into her alleged injury, that her "willful disregard for the truth . . . demonstrate[d] an unacceptable standard of conduct," and that her employment was terminated.

Ms. Stermer filed suit against ARTCO, its insurer, Agrinational Insurance Company, and Archer-Daniels-Midland Company, owner of the M/V COOPERATIVE ENTERPRISE and ARTCO's parent company. She alleged that she was a Jones Act seaman injured on October 9, 2007, while working in the service of the M/V COOPERATIVE ENTERPRISE, that the vessel was unseaworthy, that her dismissal by ARTCO was a retaliatory discharge, and that ARTCO unreasonably refused to pay her maintenance and cure after she was injured. She sought to recover lost wages, medical expenses, damages for pain and suffering, negligent and intentional infliction of emotional distress, punitive damages, and attorney fees.

On October 14, 2007, Ms. Stermer reported to Captain Thomas Jones that she had injured herself on October 9, when the M/V COOPERATIVE ENTERPRISE was facing up to a tow. According to her testimony and the Injury/Illness/Near Miss Report completed by Ms. Stermer on October 14, she was squatting in front of the lower half of the refrigerator in the galley cleaning condiment bottles when the vessel faced up to the tow. As she was squatting, she felt "a little jar to the boat," lost her balance, and fell forward into the refrigerator. She tried to grab a shelf in the refrigerator with her right hand to steady herself, but her fingers went through the rack, and her right hand was pushed backward. Her knees hit the floor at the bottom of the refrigerator, and she put her left hand down on the floor to brace her fall. Ms. Stermer rolled on her legs to the right such that she was sitting on her right ankle. She then got up, brushed herself off, and went back to work. She experienced pain and swelling in her hands and right ankle for which she took Advil.

2

Ms. Stermer testified that she did not report the incident the day it occurred because she did not think she was hurt and because she was afraid she might lose her job. She further testified that she told David Glisson, an engineer on the vessel, about the incident on October 14 because her hands and right ankle continued to swell and she could no longer lace her shoes. She formally reported it after Mr. Glissson reported what she told him to Randoll Inness, the pilot who had been operating the vessel when she was injured. In her October 14 Injury/Illness/Near Miss Report,[1] Ms. Stermer described where she was and how the accident happened, stating, in pertinent part:

> [B]ending of the knees in front of refrigerator cleaning out steak sauce tray . . . Facing up we pumped [sic]. I lost my balance fell to my knees grabbing the shelf, my [food handling] glove slipped off. My right hand was pushed backwards towards forearm. I have been using ice and taking Advil. Very little swelling now. But I don't have much strength . . . my fingers are swollen the top of my hand and completely around my wrist. A throbbing goes towards my elbow.

On October 17, ARTCO transported Ms. Stermer to shore and to the Western Baptist Hospital in Paducah, Kentucky, for evaluation and treatment. Her description of how she was injured and her complaints were consistent with the report she completed on the vessel. After examination and x-rays, Ms. Stermer was diagnosed with bilateral hand and wrist sprains and right ankle sprain. The emergency room doctor prescribed and fitted her with bilateral wrist splints and an ace wrap and air cast for her right ankle. The doctor also prescribed anti-inflammatory medication and pain medication. Ms. Stermer returned to the vessel and performed her duties but was relieved and transported to Baton Rouge. A

---

[1] Ms. Stermer completed a revised report on October 17 and/or 18 due to technical errors. In those reports, she essentially restated what she stated in her October 14 report.

personal friend picked her up at the Baton Rouge airport and drove her home to Krotz Springs.

As noted by ARTCO, Ms. Stermer's claim was "hotly contested" by Captain Thomas Jones and Bobby Joe Stark, other ARTCO employees who were in the galley at the time Ms. Stermer claimed she was injured. Both men repudiated her claim that she was injured October 9 when the vessel was facing up to its tow. Captain Jones testified that two bumps occurred when the vessel faced up and that he was facing in the same direction as Ms. Stermer at that time. He further related that Ms. Stermer was squatted in front of the refrigerator with the door open on the first bump. When asked if she lost her balance, he stated that he did not see her lose her balance, and he denied that she was "thrown" into the refrigerator, as she testified in her deposition and at trial. Captain Jones later testified that nothing happened to Ms. Stermer on the first or second bump. Captain Jones also testified that Ms. Stermer appeared normal and did not complain of pain after the two bumps.

Bobby Stark, a deckhand, was standing three feet from Ms. Stermer when she claimed to have been injured. He described the bump as "casual" and "nothing out of the ordinary." He testified that "nothing ever occurred," that Ms. Stermer did not lose her balance, and that she was not knocked down.

Ms. Stermer continued having problems with her right hand, wrists, and right ankle after leaving the M/V COOPERATIVE ENTERPRISE. On November 9, 2007, she sought treatment from Dr. Darrell Henderson, a plastic surgeon who devotes sixty percent of his practice to the treatment of the hand, wrist, or forearm. Ms. Stermer's description of the October 9 incident and her complaints to

4

Dr. Henderson were the same she reported in her October 14 and 17 reports and to the emergency room physician at the Western Baptist Hospital.

Initially, Dr. Henderson prescribed conservative treatment for Ms. Stermer, and all her complaints but her right wrist improved. On January 16, 2008, an MRI of Ms. Stermer's right wrist showed a scapholunate ligamentous tear with a widening of the space between the scaphoid and lunate bones in her right wrist. Dr. Henderson explained that a sprain is a tear or partial tear of a ligament which can heal and not cause more problems. He further explained that the ligament may also continue to tear and become a very serious problem as it did for Ms. Stermer. According to Dr. Henderson, edema present in the bones around the scapholunate area and the metacarpals was indicative of an acute injury to that area within a few months before the MRI.

Beginning in February 2008, Dr. Henderson considered fusing Ms. Stermer's right wrist as a treatment option but initially tried steroid injections. The injections did not give Ms. Stermer lasting relief, and she underwent surgery on May 11, 2010, to repair the scapholunate dissociation, a tear in the ligament between the scaphoid and lunate bones of her right hand that resulted in the rotation of these two bones. Dr. Henderson testified that the scapholunate dissociation did not predate Ms. Stermer's October 9, 2007 injury because the scaphoid and lunate bones did not rotate on examination when he initially examined her. Dr. Henderson determined that she was at maximum medical cure in March 2011 and assigned her a 35% permanent impairment of her right hand and restricted her to light to medium work.

Though being continuously provided information concerning Ms. Stermer's medical treatment and requests for payment of maintenance and medical treatment,

including the surgery recommended by Dr. Henderson, ARTCO continuously refused to pay maintenance and cure until March 2010. It did not approve the surgery recommended by Dr. Henderson in February 2008 until May 2010, even though Dr. Larry Ferachi, an orthopedic surgeon who performed an IME of Ms. Stermer on June 8, 2009, at ARTCO's request, agreed with Dr. Henderson's recommendation for surgery. Dr. Ferachi agreed that Ms. Stermer's description of the October 9, 2007 incident was consistent with the injury she described to him but disagreed with Dr. Henderson's opinion that Ms. Stermer's scapholunate dissociation did not predate October 9, 2007. In his opinion, August 2006 x-rays of her hand and wrist showed the condition existed at that time.

The trial court determined that Ms. Stermer proved she was injured as she claimed on October 9, 2007, and awarded her the following damages:

| | |
|---|---|
| Loss of past employee benefits | $ 25,740.00 |
| Loss of future employee benefits | $ 73,922.00 |
| Loss of past wages | $ 133,054.00 |
| Loss of future wages | $ 204,231.00 |
| Past pain and suffering | $ 100,000.00 |
| Future pain and suffering | $ 100,000.00 |

The trial court also determined that ARTCO's refusal to pay Ms. Stermer maintenance and cure for two and one-half years was arbitrary and capricious and awarded her $300,000.00 in punitive damages and $150,000.00 in attorney fees. It dismissed her claims of unseaworthiness and retaliatory discharge, finding she did not prove those claims.

ARTCO appealed the judgment and assigned errors with the awards of punitive damages and attorney fees. Ms. Stermer answered ARTCO's appeal and

requested increases of all the amounts awarded to her by the trial court. After consideration of ARTCO's assignments of error, she waived all her assigned errors but those in which she asserted that the awards of punitive damages and attorney fees should be increased. She also sought an award of attorney fees for work performed by her attorney on appeal.

## STANDARD OF REVIEW

When reviewing general maritime claims, Louisiana appellate courts apply the manifest error standard of review. *Milstead v. Diamond M Offshore, Inc.*, 95-2446 (La. 7/2/96), 676 So.2d 89. Ms. Stermer's claims for maintenance and cure, penalties, and attorney fees are general maritime claims; therefore, we cannot reverse a factual determination of the trial court unless no reasonable factual basis exists in the record for that determination and the record shows that the finding is clearly wrong or manifestly erroneous. *Stobart v. DOTD*, 617 So.2d 880 (La.1993). When reviewing a trial court's factual determination, appellate courts focus on whether the finding is reasonable, not whether it is right or wrong. *Id.* If the trial court committed legal error, however, the appellate court performs a de novo review. *Smith v. Tidewater, Inc.*, 04-195 (La.App. 4 Cir. 3/2/05), 918 So.2d 1, *writs denied*, 05-2361, 05-2441 (La. 4/17/06), 926 So.2d 510, 513, respectively.

## DISCUSSION

"Maintenance and cure" is an ancient duty imposed upon the owner of a ship to provide food, lodging and necessary medical services to seamen who become ill or injured during service to the ship. Recovery is not dependant [sic] upon negligence of the vessel or the owner and the burden of proof in seeking maintenance and cure is relatively light. *Id.* In addition, generally, a seaman need only prove that the injury arose during his service of the vessel. The seaman does not have to prove a causal connection to his duties. The right to maintenance and cure exists regardless of fault. The remedy is essentially curative in nature and is not intended as compensation for injury. The right to maintenance and cure arises from the

employee-employer relationship. Thus, the liability of shipowner for maintenance and cure will be excused only by willful misbehavior or deliberate act of indiscretion on part of seaman.

*Domonter v. C.F. Bean Corp.*, 99-1204, pp. 17-18 (La.App. 5 Cir. 4/25/00), 761 So.2d 629, 640, *writ denied*, 00-1872 (La. 9/29/00), 779 So.2d 354 (citations omitted).

Though a seaman's burden of proof is relatively light, an employer is entitled to investigate a seaman's claim for maintenance and cure and to rely on recognized defenses to deny benefits when appropriate. *Brown v. Parker Drilling Offshore Corp.,* 410 F.3d 166, 171 (5th Cir. 2005), *cert. denied*, 549 U.S. 952, 127 S.Ct. 382 (2006). When investigating a seaman's claim for maintenance and cure, the employer is entitled to "require corroboration of the claim." *Morales v. Garijak, Inc.,* 829 F.2d 1355, 1358 (5th Cir.1987) (abrogated on other grounds by *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496 (5th Cir.1995) (en banc). An employer's "failure to pay maintenance and cure . . . is reasonable if a diligent investigation indicates that the seaman's claim is not legitimate or if the seaman does not submit medical reports to document his claim." *Id*. at 1360 (footnotes omitted). If an employer is lax in its investigation of a seaman's claim, it has not satisfied its duty to investigate. *Spell v. Am. Oilfield Divers, Inc.*, 98-498 (La.App. 3 Cir. 12/9/98), 722 So.2d 399, *writs denied*, 99-65, 99-74 (La. 2/26/99), 738 So.2d 587, 589, respectively. Importantly, when an employer's investigation of a seaman's claim reveals that doubts or ambiguities exist as to whether the seaman is entitled to maintenance and cure, "they are resolved in favor of the seaman." *Cagle v. Harrah's Lake Charles, L.L.C.*, 07-653, p. 12 (La.App. 3 Cir. 12/12/07), 974 So.2d 34, 43 (citing *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997 (1962)).

8

If an employer fails to properly investigate a claim for maintenance and cure or unreasonably rejects a claim after investigating the claim, the employer may be liable for compensatory damages that are a consequence of the failure to pay maintenance and cure. *Vaughan*, 369 U.S. 527, 82 S.Ct. 997. The employer may also be liable for punitive damages and attorney fees if it is "more egregiously at fault" in denying a proper claim for maintenance and cure. *Morales*, 829 F.2d at 1358. This higher degree of fault has been explained as "callous and recalcitrant, arbitrary and capricious, or willful, callous and persistent." *Id*. An employer's failure or refusal to consider the medical evidence of an injury or illness submitted by a seaman in support of his claim for maintenance and cure is grounds for concluding the employer's failure to institute maintenance and cure is arbitrary and willful. *Holmes v. J. Ray McDermott & Co., Inc.*, 734 F.2d 1110 (5th Cir. 1984).[2]

ARTCO first argues that we must conduct a de novo review because the trial court committed legal error. Citing *Morales*, ARTCO claims that because Ms. Stermer did not report her injury when it occurred, (2) its investigation of her claim revealed evidence that no accident occurred on October 9, 2007, and (3) Ms. Stermer was not injured as she claimed, it cannot be held liable for penalties and attorney fees. As discussed below, these claimed errors lack merit. Accordingly, the trial court did not commit legal error, and we review the trial court's findings of fact for manifest error.

Review of the record shows that ARTCO considered only evidence that indicated the incident Ms. Stermer reported did not occur before denying her claim

---

[2] *Holmes's* holding that a seaman is entitled to punitive damages for an employer's unreasonable refusal to pay maintenance and cure was overruled by *Guevara*, 59 F.3d 1496, but in *Atlantic Sounding Co., Inc. v. Townsend*, 496 F.3d 1282 (11th Cir. 2007), *aff'd* 557 U.S. 404, 129 S.Ct. 2561 (2009), the Eleventh Circuit abrogated the holding in *Guevara.*

for maintenance and cure. Mark Bartlett, an ADM adjustor in charge of Ms. Stermer's claim, relied on the statements of employees that nothing happened in the galley on October 9, 2007, without giving due consideration to evidence corroborating the claimed incident, namely: (1) Ms. Stermer was on the vessel twenty-four hours a day for nineteen days straight before she was injured; (2) she performed her job duties as usual before the claimed incident without complaint and without any physical signs of injury; (3) two bumps occurred when the vessel faced up to its tow on October 9, as stated by Ms. Stermer; (4) Captain Jones and Mr. Starks corroborated Ms. Stermer's position and location at the time she claimed to be injured; (5) the stability and/or instability of Ms. Stermer in the squatting position when she claimed to have lost her balance; (6) Ms. Stermer continued to perform her regular job duties after she claimed to have been injured before seeking medical attention and after she received medical treatment; (6) a statement obtained from ARTCO employee, Tony Morth, on October 18 indicated that Ms. Stermer suffered some injury while on the M/V COOPERATIVE ENTERPRISE;[3] and (7) medical evidence ARTCO received beginning October 17, 2007, and continuing thereafter, corroborated Ms. Stermer's claim that she suffered injuries while aboard the M/V COOPERATIVE ENTERPRISE.

Therefore, while ARTCO had evidence indicating Ms. Stermer was not injured as she claimed, it also had evidence supporting her claim. Moreover, Mr. Bartlett admitted he did not know that when doubt or ambiguity exists as to the validity of a seaman's claim, the law requires that the claim be resolved in favor of the seaman. This admission together with ARTCO's termination of Ms. Stermer

_____

[3] In a statement dated October 17, 2010, Mr. Morth stated that he assisted Ms. Stermer with her bags and getting into a cab when she was going to Western Baptist Hospital because of pain in her wrists, knees, and ankles.

shortly after she reported the incident corroborates that its investigation of the incident ended almost immediately after Mr. Bartlett reviewed Captain Jones's and Mr. Starks's statements without giving sufficient consideration to other facts surrounding the incident and the medical evidence that corroborated her claim. The totality of the evidence leads to the conclusion that once ARTCO had evidence that no accident occurred, it did not consider evidence corroborating Ms. Stermer's claim that she was injured October 9. Under these facts, we find that ARTCO's investigation of Ms. Stermer's claim was neither diligent nor reasonable and, therefore, find no manifest error in the trial court's conclusion that ARTCO was arbitrary and capricious in denying Ms. Stermer's claim. *See Spell*, 722 So.2d 399.

ARTCO further argues that it properly denied maintenance and cure and that its denial of Ms. Stermer's claim does not warrant penalties and attorney fees because she did not reveal complaints regarding her hands wrist, fingers, and forearms on her December 2005 pre-employment medical history form though she reported having pain and/or numbness in those areas for four years when she sought treatment in August 2006 for carpal tunnel syndrome.

When an employer's investigation reveals a "causal link" between an injury a seaman claims occurred while in the service of the employer's vessel and a pre-existing disability or illness, the employer may not be liable for maintenance and cure under certain conditions. *McCorpen v. Cent. Gulf S. S. Corp.*, 396 F.2d 547 (5th Cir.1968), *cert. denied*, 393 U.S. 894, 89 S.Ct. 223 (1968). If the employer did not require a pre-employment medical examination, the seaman must disclose a pre-existing condition or injury only if he believes the employer would consider it important. *Id.* If a pre-employment physical is required, the denial of maintenance

11

and cure is proper only if the employer proves that the seaman intentionally or fraudulently concealed a pre-existing condition or injury. *Id.*

No pre-employment medical examination was required by ARTCO for Ms. Stermer, and ARTCO has not presented any evidence showing she believed ARTCO would have considered her complaints regarding any pain and/or numbness in her hands, wrists, fingers, and forearms that she experienced before October 2005 important. Indeed, she had been performing her duties as a cook on a vessel for another company with no problems when she applied for employment with ARTCO, and she performed the same duties for two years with no problems for ARTCO. Furthermore, no evidence indicates that Ms. Stermer intentionally and fraudulently concealed a pre-existing condition with her right hand from ARTCO.

ARTCO's consistent refusal to pay maintenance and cure was arbitrary and capricious and resulted in Ms. Stermer having to sell her vehicle and borrow money to fund necessary repairs to her home and her basic living expenses. Accordingly, we find no error with the trial court's conclusion that ARTCO's arbitrary and capricious refusal to pay Ms. Stermer maintenance and cure warrants the imposition of punitive damages and attorney fees.

ARTCO contends the trial court's award of attorney fees without evidence of the work expended by Ms. Stermer's counsel in this matter was error. This court determined in *Spell*, 722 So.2d 399, that evidence of what is an appropriate award for attorney fees for a maintenance and cure claim is required. The *Spell* court also determined that evidence on the issue of attorney fees is not properly presented until a finding that an award of attorney fees is due has been made. Accordingly, we remand this matter to allow the trial court to receive evidence of

what an appropriate award of attorney fees is in this case and to award attorney fees commensurate with said evidence. For these reasons, consideration of Ms. Stermer's request for an increase of the attorney fees awarded by the trial court is not properly before this court.

With regard to attorney fees for work performed on appeal by Ms. Stermer's attorneys, the record demonstrates that Ms. Stermer's attorneys have exercised a great amount of skill and have diligently prepared for ARTCO's appeal of this case. Counsel's legal work before this court has been excellent. We award Ms. Stermer $10,000.00 in attorney fees for work done on appeal. We reject ARTCO's argument that attorney fees for work performed on this appeal by Ms. Stermer's attorneys cannot be awarded because the work is not directed to "securing maintenance and cure."

The Supreme Court determined in *Vaughan*, 369 U.S. at 530, 82 S.Ct. at 999 (quoting *Cortes v. Baltimore Insular Line*, 287 U.S. 367, 371, 53 S.Ct. 173, 174 (1932), that the recovery of maintenance and cure may include "'necessary expenses'" including attorney fees. If a seaman must pay attorney fees to protect on appeal her award of expenses that were required to initially secure her maintenance and cure, the effect would be to reduce her recovery of maintenance and cure. Accordingly, we conclude attorney fees are properly awarded for work performed on this appeal.

Ms. Stermer requests an increase in her award of punitive damages. On appeal, the abuse of discretion standard of review is utilized to review whether an award of punitive damages is too high or too low. *Mosing v. Domas*, 02-12 (La. 10/15/02), 830 So.2d 967. An award of punitive damages is fact intensive and "the unique province of the jury or trier of fact." *Id*. at 974. Historically, these factors

13

have been considered when reviewing an award of punitive damages: "(1) the nature and extent of the harm to the plaintiff; (2) the wealth or financial situation of the defendant; (3) the character of the conduct involved; and (4) the extent to which such conduct offends a sense of justice and propriety." *Id.* at 977. "[E]xemplary damages serve a threefold purpose: punishment, specific deterrence, and general deterrence. The damages awarded . . . must be reasonable in amount and sufficient to satisfy these three objectives, but should be no more than that required to meet these objectives." *Id.* at 978.

Ms. Stermer acknowledges that the trial court considered the hardship and harm she experienced as a result of ARTCO's refusal to promptly pay her maintenance and cure but contends the trial court did not properly consider the remaining factors. She specifically urges that the trial court should have considered the financial situation of ADM, ARTCO's parent company. We have considered the evidence Ms. Stermer presented on the factors enumerated in *Mosing* and the objectives of exemplary damages. As pointed out by ARTCO, no evidence of its profits is in the record. Additionally, while evidence of ADM's profits is in the record, Ms. Stermer's claims against ADM were dismissed by the trial court, and she did not appeal the dismissal of those claims. Notably, no evidence shows the relation between ARTCO's earnings and profits and ADM's profits. For these reasons, we find no abuse of discretion in the trial court's $300,000.00 award for punitive damages.

## DISPOSITION

For the reasons discussed herein, the trial court's determinations that Ms. Stermer is entitled to awards of penalties and attorney fees and an award of $300,000 in punitive damages are affirmed. The award of $150,000 in attorney

fees is reversed, and the matter is remanded for the trial court to consider the traditional factors pertinent to an award of attorney fees and determine the appropriate amount of attorney fees for work performed by Ms. Stermer's counsel in the trial court. Ms. Stermer is awarded $10,000 in attorney fees for work performed by her attorneys on appeal. All costs of this appeal are assessed to American River Transportation Company and Agrinational Insurance Company.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.**