# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-811


**ADRIENNE STERMER**

**VERSUS**

**ARCHER-DANIELS-MIDLAND COMPANY, ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 08-C-6424-B
HONORABLE ELLIS J. DAIGLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN E. CONERY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Elizabeth A. Pickett, and John E. Conery, Judges.

Pickett, J., concurs in part, dissents in part, and assigns reasons.

**AFFIRMED.**

Georges M. Legrand
Adam P. Sanderson
Mouledoux, Bland, Legrand & Brackett LLC
701 Poydras Street, Suite 4250
New Orleans, LA 70139
(504) 595-3000
COUNSEL FOR DEFENDANTS-APPELLANTS:
    American River Transportation Co.
    Agrinational Insurance Company

Lawrence N. Curtis
Lawrence N. Curtis, LTD.
A Professional Law Corporation
Post Office Box 80247
Lafayette, LA 70598-0247
(337) 235-1825
COUNSEL FOR PLAINTIFF-APPELLEE:
    Adrienne Stermer

**CONERY, Judge.**

Employer appeals the trial court's award of $309,174 in attorney fees to plaintiff's attorney for work performed to secure payment of maintenance and cure to his client. In answer to appeal, employee claims attorney fees for work done on the trial on remand and on this appeal, requests ninety percent of the court costs on remand be assessed to defendant, asks for additional court costs not awarded by the trial court on remand to be assessed, and prays he be awarded attorney fees for work done on this appeal. For the following reasons, we affirm the trial court's judgment in its entirety, award $10,000 in attorney fees to employee for work done on appeal, and assess all costs of this appeal to employer.

## FACTS AND PROCEDURAL HISTORY

Adrienne Stermer sued her employer, ARTCO, its insurer, Agrinational Insurance Company, and Archer-Daniels-Midland Company, owner of the M/V COOPERATIVE ENTERPRISE and ARTCO's parent company (hereinafter referred to collectively as "ARTCO"), alleging that she was a seaman injured through the negligence of her employer on October 9, 2007, while working in the service of the M/V COOPERATIVE ENTERPRISE, and that she was entitled to damages under the Jones Act. Ms. Stermer further alleged that the vessel was unseaworthy, that she was improperly dismissed, and that her dismissal constituted a retaliatory discharge by ARTCO. She further claimed that ARTCO unreasonably refused to pay her maintenance and cure after she was injured, and that she was thereby entitled to punitive damages and attorney fees. ARTCO rigorously defended the suit and, from the beginning, took the position that the claim was fraudulent and that Ms. Stermer did not sustain an injury while in the service of the

vessel. Following a hotly contested bench trial, the trial court made the following awards on the Jones Act claim:

| | |
|---|---|
| Loss of past employee benefits | $ 25,740 |
| Loss of future employee benefits | $ 73,922 |
| Loss of past wages | $133,054 |
| Loss of future wages | $204,231 |
| Past pain and suffering | $100,000 |
| Future pain and suffering | $100,000 |

In thorough written reasons for judgment, the trial court also determined that ARTCO's refusal to pay Ms. Stermer maintenance and cure for two and one-half years following her injury was arbitrary and capricious and awarded her $300,000 in punitive damages and $150,000 in attorney fees. It dismissed her claims of unseaworthiness and retaliatory discharge, finding she did not prove those claims.

On appeal, this court affirmed the trial court's judgment on the Jones Act claim and its determination that Ms. Stermer was entitled to $300,000 in punitive damages for ARTCO's arbitrary and capricious failure to pay maintenance and cure. The original panel also affirmed the trial court's finding that Ms. Stermer was entitled to attorney fees for arbitrary and capricious failure to pay maintenance and cure, but reversed the award of $150,000 in attorney fees, as no analysis was made by the trial court as to how it arrived at the amount awarded. The original panel remanded the matter "for the trial court to consider the traditional factors pertinent to an award of attorney fees and determine the appropriate amount of attorney fees for work performed by Ms. Stermer's counsel in the trial court." The original panel awarded Ms. Stermer $10,000 in attorney fees for work performed by her attorneys on the original appeal, plus all costs of that appeal. *Stermer v. Archer-Daniels-Midland Co.*, 14-147 (La.App. 3 Cir. 6/4/14), 140 So.3d 879.

2

ARTCO filed a writ application with the supreme court which was denied. *Stermer*, 14-1434 (La. 10/24/14), 151 So.3d 603. Except for the amount of attorney fees owed, that judgment is now final.

On remand, the trial court[1] awarded Ms. Stermer $309,174 in attorney fees and court costs in the amount of $1,037.15, plus "all court costs assessed against [Ms. Stermer] by the Clerk of Court, subject to a credit for those costs already reimbursed or paid by [ARTCO]." ARTCO appealed the trial court's award, and Ms. Stermer answered the appeal.

## ASSIGMENTS OF ERROR

ARTCO assigns two errors with the trial court's judgment:

1. The district court erred in awarding plaintiff [attorney fees] for time spent after maintenance and cure benefits were commenced by ARTCO.

2. The district court erred in allocating the time spent by plaintiff's counsel on the prosecution of maintenance and cure benefits and other claims.

Ms. Stermer answered the appeal and requests that we modify and amend the trial court's judgment as follows:

1. The district court failed to consider, and thus the award of attorney fees below, should be increased to include the time spent by the Plaintiff-Appellee establishing and protecting her right to an attorney's fee award;

2. The district court failed to consider, and thus the award of costs below, should be increased to include ninety percent (90%) of the costs incurred by the Plaintiff-Appellee in prosecuting this action in the district court;

---

[1] We note that the issue of attorney fees was tried before a different trial judge than the one who presided over the trial on the merits because the initial trial judge retired before the matter was remanded for a trial on attorney fees and costs and a new judge was elected in that court section.

3

3. In addition, Plaintiff-Appellee requests that this Honorable Court make an award for [attorney fees] for the work performed by her attorneys on this appeal.

*Standard of Review*

We review the factual conclusions of the trial court's judgment in this matter pursuant to the manifest error standard of review. *Menard v. Lafayette Ins. Co.*, 09-1869 (La. 3/16/10), 31 So.3d 996. In *Menard*, the supreme court restated the importance of this doctrine explaining: "The manifest error doctrine is not so easily broached. Rarely do we find a reasonable basis does not exist in cases with opposing views." *Id.* at 1011. The court noted:

> [I]t is not hard to prove a reasonable basis for a finding, which makes the manifest error doctrine so very difficult to breach, and this is precisely the function of the manifest error review. . . . [I]t should be a rare day finding a manifest error breach when two opposing views are presented to the trier of fact."

*Id.*

More recently in *Hayes Fund For The Frist United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mountain, LLC*, 14-2592 (La. 12/08/15), ___ So.3d ___, the supreme court reiterated the duty of appellate courts in a manifest error review and stated in pertinent part:

> In all civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a trial court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. *Cenac v. Public Access Water Rights Ass'n*, 02-2660, p. 9 (La.6/27/03), 851 So.2d 1006, 1023. Thus, a reviewing court may not merely decide if it would have found the facts of the case differently. *Hall v. Folger Coffee Co.*, 03-1734, p. 9 (La.4/14/04), 874 So.2d 90, 98. Rather in reversing a trial court's factual conclusions with regard to causation, the appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusion, and the

4

finding must be clearly wrong. *Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880, 882 (La.1993).

> This test requires a reviewing court to do more than simply review the record for some evidence, which supports or controverts the trial court's findings. The court must review the entire record to determine whether the trial court's finding was clearly wrong or manifestly erroneous. *Parish Nat. Bank v. Ott*, 02-1562, pp. 7-8 (La.2/25/03), 841 So.2d 749, 753-54. The issue to be resolved on review is not whether the judge or jury was right or wrong, but whether the judge's or jury's factfinding conclusion was a reasonable one. *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989); *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La.1973).

*Id.* at p. 4.

Errors of law, however, are reviewed de novo. *See Foti v. Holliday*, 09-93 (La. 10/30/09), 27 So.3d 813. Accordingly, when reviewing an issue of law, we "render[] judgment based on the record without deference to the legal conclusions of the lower courts." *Id.* at 817.

### Assignment of Error One - Entitlement to Attorney Fees After Payment of Maintenance and Cure Under Protest

An award of attorney fees for an employer's failure to pay maintenance and cure is appropriate only when an employer's failure or refusal to pay maintenance and cure is found to be "callous and recalcitrant, arbitrary and capricious, or willful, callous and persistent." *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir.1987) (abrogated on other grounds by *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496 (5th Cir.1995)(en banc)). The trial court so found, a panel of this court affirmed that finding on original appeal, *Stermer*, 140 So.3d 879, and that issue is now res judicata. *See* La.R.S. 13:4231.

However, ARTCO argued to the trial court, as it does here, that when it paid all the maintenance and cure owed Ms. Stermer on April 19, 2010, "under protest,"

and kept those payments current, her claim for attorney fees was limited to the time period preceding the date of its "payment under protest." It now asserts that the trial court's award for work performed by Ms. Stermer's attorney after that date constitutes an error of law. We disagree and hold that the attorney fees award was set pursuant to a limited remand and was decided in well-articulated factual findings by the trial court which must be reviewed using the manifest error standard. *See Hayes*, ___So.3d ___.

Pursuant to our remand order, the trial court reviewed the jurisprudential factors involved in setting attorney fees and set attorney fees at $309,174. The award was based on the "lodestar method."[2] The trial court on remand accepted plaintiff's counsel's testimony and his reconstructed time sheets as credible, found that $300.00 was a reasonable hourly rate, and found that ninety percent of counsel's work reflected in plaintiff's reconstructed time sheets for counsel and associate counsel on that issue was a fair apportionment of time. Based on a finding of 988.30 total hours spent on all issues, a $300.00 hourly rate, and a ninety percent time allocation, the trial court on remand awarded $309,174 in attorney fees for ARTCO's arbitrary and capricious failure to timely pay maintenance and cure.

---

[2] The Louisiana Supreme Court in *Covington v. McNeese State Univ.*, 12-2182 pp. 5-6, (La. 5/7/13), 118 So.3d 343, 348 (emphasis added), in defining "lodestar method" of calculating attorney fees stated:

> The U.S. Supreme Court established in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), that the initial estimate of a reasonable attorney fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate, otherwise known as the "**lodestar method**." A "reasonable hourly rate" is to be calculated according to the prevailing market rates in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). "The amount of the fee, of course, must be determined on the facts of each case." *Hensley,* 461 U.S. at 429, 103 S.Ct. at 1937.

6

It is important to note that maintenance and cure is an ancient, equitable recovery made available to seaman who fall ill or are injured in the service of the ship.  In *Vaughn v. Atkinson*, 369 U.S. 527, 531-32, 82 S.Ct. 997, 1000 (1962), the Supreme Court discussed the history and interpretation of maintenance and cure and provided:

> Maintenance and cure is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery. The policy underlying the duty was summarized in *Calmar S.S. Corp. v. Taylor, 303 U.S. 525, 528, 58 S.Ct. 651, 653, 82 L.Ed. 993*:
>
>> 'The reasons underlying the rule, to which reference must be made in defining it, are those enumerated in the classic passage by Mr. Justice Story in *Harden v. Gordon, C.C.*, Fed.Cas.No. 6047: The protection of seamen, who, as a class, are poor, friendless and improvident, from the hazards of illness and abandonment while ill in foreign ports; the inducement to masters and owners to protect the safety and health of seamen while in service; and maintenance of a merchant marine for the commercial service and maritime defense of the nation by inducing men to accept employment in an arduous and perilous service.'
>
> Admiralty courts have been liberal in interpreting this duty 'for the benefit and protection of seamen who are its wards.' Id., at 529, 58 S.Ct. at 654.  We noted in *Augilar v. Standard Oil Co.*, 318 U.S. 724, 730, 63 S.Ct. 930, 933, 934, 87 L.Ed. 1107, that the shipowner's liability for maintenance and cure was among 'the most pervasive' of all and that it was not to be defeated by restrictive distinctions nor 'narrowly confined.' Id., at 735, 63 S.Ct. at 936.  When there are ambiguities or doubts, they are resolved in favor of the seaman. *Warren v. United States*, 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503.

It is undisputed that on April 19, 2010, prior to the original trial on the merits, ARTCO tendered all past due maintenance and cure and stipulated that it would continue to pay maintenance and cure, **but with a reservation of rights to**

7

**contest the issue at trial**.  Plaintiff reached maximum medical cure on May 9, 2011.  At the time of trial in September of 2013, defendants' had paid all outstanding maintenance and cure, which totaled approximately $56,000.

Counsel for the plaintiff argues that the defendants' decision to pay maintenance and cure two years and five months after the accident was not done out of concern for the plaintiff.  Payment of the outstanding maintenance and cure was prompted by the deposition of Ms. Stermer, taken in March 2010, and the United States Supreme Court case of *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 424, 129 S.Ct. 256, 2575 (2009), which held that a seaman was entitled to the recovery of punitive damages for the "willful and wanton disregard of its maintenance and cure obligations," reversing contrary decisions.  In tendering maintenance and cure "under protest," Ms. Stermer argues that ARTCO was simply trying to shield itself from a punitive damages and an attorney fees claim.

However, as found by the trial court on remand, once ARTCO made a payment of past due maintenance and cure and continued to pay pursuant to their stipulation until final cure, but with a reservation of rights to litigate the underlying issue of entitlement to those benefits at trial, the plaintiff still had the obligation to prove up all the elements necessary to recover maintenance and cure.  Ms. Stermer had to prove at trial that she was injured in the service of the ship, that she required medical treatment based on that injury, that she was unable to work, and that she was, therefore, entitled to maintenance and cure from date of injury through final cure, plus punitive damages and attorney fees for arbitrary and capricious failure to pay maintenance and cure.  In order to prevail on the Jones Act claim, she also was required to prove that she sustained an injury due to the negligence of her Jones Act employer, as well as medical causation of her treatment and disability for the

Jones Act claim, plus proof of all damages sought.

ARTCO put up a stout defense, contending from the outset and through initial appeal that there was no accident, no injury, that plaintiff's claims were fraudulent, and that she was not entitled to any recovery whatsoever. The record shows that Ms. Stermer's counsel put on more than sufficient evidence to prove that his client did, indeed, sustain an injury in the service of the vessel. He hired experts on both the negligence and medical causation issues, and successfully prosecuted his client's claims, achieving an excellent result. Ms. Stermer received an award of $636,000 on the Jones Act claim.

Not only did Ms. Stermer's counsel prove entitlement to maintenance and cure, but he was able to put on sufficient evidence such that the original trial court found that ARTCO was arbitrary and capricious in failing to timely pay maintenance and cure and Ms. Stermer was awarded an additional $300,000 in punitive damages for failure to timely pay maintenance and cure, which resulted in a $936,000 total award, affirmed on original appeal. We quote with approval from the original trial court's excellent written reasons on the punitive damages and attorney fees issue:

> ARTCO attempts to avoid any obligation to pay maintenance and cure by claiming, that the accident was a fraud and no injuries were suffered by Stermer while she was in the service of the vessel. This court finds that the (sic) ARTCO has failed to provide evidence of any fraud on the part of Stermer, except for the statements of two supervisors of Stermer who said they did not see her fall. Further, fault or liability plays no role in the determination of an employer's maintenance and cure obligation. Stermer was aboard the *ENTERPRISE* 24 hours a day - 7 days a week - for the 17 days prior to her evaluation and treatment at Western Baptist Hospital. Until her accident, she performed her duties (work) without complaints of pain or inability to perform. After her accident, the symptoms of her injury manifested themselves, i.e. pain, swelling, and the inability to perform her work. This court agrees with Stermer that no evidence exists to indicate where, other than the *ENTERPRISE*, that Stermer may have

suffered from two sprained wrists and a sprained ankle significant enough to warrant narcotic pain medication, splints to both wrists and an air cast on her ankle.

. . . .

Moreover, a vessel owner is obligated to investigate a claim before denying or terminating benefits *Vaughan*, 369 U.S. at 530-31, 533, and may refuse to pay maintenance and cure only "if diligent investigation indicates that the seaman's claim is not legitimate. . . ." *Morales v. Garijak*, 829F. 2d 1355, at 1360 (5 Cir.1987); and *McWilliams v. Texaco*, 781F. 2d 514 at 518-20 (5 Cir.[]1986). Stermer alleges that ARTCO's investigation into this matter, was anything but "diligent," because Bartlett made the decision to label this case fraudulent and call Stermer a liar without having talked face-to-face with a single witness and relying on the statements of two supervisory employees who were primarily responsible for ensuring that Stermer had a safe place to work. ARTCO took this position as early as October 19, 2007, ten (10) days post-accident, when it sent a letter to Stermer stating that it had conducted its investigation. ARTCO maintained that there was no accident and Stermer had sustained no injury.

Additionally, ARTCO had the initial medical report from Western Baptist Hospital of October 17, 2007, stating that Stermer had a bilateral hand and wrist sprain and right ankle sprain, and placed her hands and wrist in splints; various medical reports of Dr. Darrell L. Henderson beginning with his initial examination of Stermer, including his recommendation for a full wrist fusion of the right wrist on February 11, 2008; the medical report of Dr. Larry Ferachi, ARTCO's chosen doctor to examine Stermer, who agreed with Dr. Henderson's recommendation for surgery on June 8, 2009; and the information from ARTCO's engineer, David Glisson, that he had fallen as a result of the bump that took place on October 9, 2007.

Despite all of the above, ARTCO refused to pay maintenance and cure or medical expenses until April 19, 2010, which was two and one-half (2.5) years after the accident and over ten (10) months after the medical report of its own physician, Dr. Ferachi, and numerous demands for maintenance and cure and medical expenses. Dr. Henderson opined that the wrist injury to Stermer was not a pre-existing injury, and Dr. Ferachi stated that it was a pre-existing injury that was aggravated. In any regards, maintenance and cure applies in both situations.

The court can understand ARTCO's refusal to pay maintenance and cure at the onset of this case, but fails to understand why ARTCO waited an additional ten (10) months after Dr. Ferachi's report before paying same, even under protest. The question that continues to come

10

up is "how did she receive the injuries if she had if she did not receive them in this accident," i.e. two sprained wrists and a sprained ankle. She was on this vessel 24 hours a day, 7 days a week for 17 days before she was seen at Western Baptist Hospital with no prior complaints or an inability to work. There was no evidence of Stermer getting onto the tug, *ENTERPRISE*, with the injuries diagnosed by Western Baptist Hospital, and no complaints by Sterner of pain, no swelling of wrists and/or ankle, and no inability to perform her duties prior to the accident.

. . . .

Despite medical and other evidence, ARTCO continued to deny the claim for maintenance and cure of Stermer through the trial in this matter even though it paid Stermer under protest beginning on April 19, 2010, which was two and one-half (2.5) years post-accident and ten (10) months after receiving Dr. Ferachi's medical report that plaintiff required surgery.

Relying on *Weeks* [*Marine, Inc. v. Bowman*, 2004 WL 2609967 (E.D.La.2004)], this court finds that ARTCO acted arbitrarily and capriciously in denying Stermer maintenance and cure for her injuries. Accordingly, Stermer is entitled to punitive damages and attorney fees from ARTCO.

At the original trial, defendant was successful only in defending the unseaworthiness claim and the wrongful discharge claim. These issues did not affect the overall result.

As we previously indicated, the purpose of the remand was to take evidence on the attorney fee issue, if needed, articulate a review of the factors provided by law for making an award of attorney fees, find an equitable award of attorney fees in this particular case, and express reasons for ruling thereon. The Supreme Court in *Vaughn*, held that reasonable attorney fees could be awarded as damages when a seaman had to hire an attorney to recover maintenance and cure. It further specifically held that when there are ambiguities and doubts, they are resolved in favor of the seaman. *See Vaughn*, 369 U.S. 527.

The trial court on remand, as ordered by this court, "considered the traditional factors pertinent to an award of attorney fees," in its determination of "the appropriate amount of attorney fees for work performed by Ms. Stermer's counsel in the trial court." *Stermer*, 140 So.3d at 889. In so doing, the trial judge applied the following factors to be taken into consideration when determining the reasonableness of attorney fees, as cited in *State, Dept. of Transp. and Development v. Williamson*, 597 So.2d 439, 442 (La. 1992):

> (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge. [3]

The trial court on remand diligently and thoroughly prepared for the hearing. In its well-articulated oral reasons for ruling, the trial judge on remand stated that it had reviewed the entire original trial transcript, all the briefs submitted and all the cases cited in the briefs submitted by both counsel, plus had done independent research on the legal issues. The trial court obviously put a lot of time and thought into preparation for the hearing.

To the point at issue, the trial court on remand clearly rejected defendant ARTCO's argument that no attorney fees were owed after it tendered payment of maintenance and cure under protest:

> One other thing I want to address . . . and that is the defense's position that after the date that they paid maintenance and cure, that the plaintiff is not entitled to any attorney fees after that date, because the claim for attorney fees should only be related to the pursuit of maintenance and cure, and once maintenance and cure is paid, there's no more maintenance and cure to secure and therefore, no attorney fees are due.

---

[3] The court in *Williamson* noted that the factors for a determination of a reasonable attorney fee award were derived from Rule 1.5(a) of the Rules of Professional Conduct.

. . . .

Let me start, Mr. Legrand, by telling you I don't buy it. Let me tell you why I don't buy it, and then I'm going to give you an opportunity, briefly, to convince me otherwise. The reason I don't buy it is this: Your position is "We paid maintenance and cure. No attorney fees are due after the date we paid maintenance and cure." Two things: 1) you paid it under protest. Now I'm going to assume, Mr. Legrand that you paid it under protest so you could reserve the right to argue whether or not maintenance and cure was actually due. And, in fact, the defense in your case, as I appreciate, when I read the record, was "we don't believe anything happened aboard this vessel, we don't believe there was any incident aboard this vessel, we don't believe she got injured in any way aboard this vessel," and you presented evidence to that effect and you presented testimony to that effect. So, I'm assuming that it was paid under protest so that you could reserve your right to argue that she was not entitled to it, otherwise, there would be no reason to pay under protest.

Having been an attorney for thirty-one years and involved in many times doing things under protest, it was reserving your right to litigate that issue down the line.

Further, I think that in order for your argument to hold weight, I would have to ignore what the Court of Appeals told you about attorney fees that it awarded to Mr. Curtis, or to the plaintiff, for the work on appeal. **The Court of Appeal indicated that the plaintiff was entitled to fees to defend and uphold the maintenance and cure that she already got. If I take that logic and I apply it to your argument, it holds the same. They're entitled to attorney fees to defend and uphold the maintenance and cure they got.**

In addition, they are intertwined and you argue that the plaintiff is not entitled to any fees, trying to prove that maintenance and cure was arbitrarily withheld. That is very disingenuous in my mind. First of all, they can't get attorney fees. They can't be awarded unless it's found that maintenance and cure was withheld, and that the reasons for doing so are found to be arbitrary and capricious. So, when you paid it, or your client, you did not stipulate "not only did we not pay it timely, we're arbitrary and capricious for doing so." Had you done that, I would buy your argument that from that date forward no attorney fees are due, because there's nothing left to prove, you're going to get them, except the amount; however, you didn't do that, your client didn't do that, and it was their right not to, but as a result, that's where I stand.

(Emphasis added.)

13

The issue of entitlement to attorney fees for work done in "proving up" the claim at trial after a "conditional tender" of maintenance and cure, but with a "reservation of rights" to contest entitlement to maintenance and cure at trial, appears to be *res nova*.

In light of the factual findings stated on the record by the trial court on remand and the lack of contrary jurisprudence on this specific issue, finding no manifest error, we affirm the trial court's decision on remand to award attorney fees for arbitrary and capricious failure to pay maintenance and cure for all work done in this case and do not restrict the award to work done prior to the conditional tender of maintenance and cure by ARTCO. *See Hayes*, ___So.3d ___. Such a decision is in keeping with the liberal interpretation in maintenance and cure cases involving injured seamen as expressed by *Vaughn* and its progeny. *See Vaughn*, 369 U.S. 527.

**Assignment of Error Number Two**

ARTCO also challenges the *amount* of the $309,174 award of attorney fees set by the trial court on remand claiming that even if plaintiff was entitled to an award for all work done on the case, and not simply for work done until defendant conditionally tendered maintenance and cure, the total award is excessive and an abuse of discretion. ARTCO argues that the trial court on remand failed to properly allocate the time counsel spent on the maintenance and cure issue at trial as opposed to the other more complicated issues in this case.

Ms. Stermer's counsel argued in the trial court on remand, and again on appeal, that the work he did on the entire case was so "intertwined" that he was unable to break down his time sheets such that the time spent solely on the maintenance and cure issue could be clearly separated from time spent in

14

preparation and trial of the entire case. ARTCO claims that it was plaintiff's burden to do so, and that the trial court was clearly wrong in assessing a ninety percent time factor to the maintenance and cure issue in assessing attorney fees for failure to pay maintenance and cure. Again, we review this claim under the manifest error standard as most recently articulated in *Hayes*.

On remand, the trial court was charged with the task of awarding an "equitable fee" based on all of the facts and circumstances of the case, and in accordance with the relevant factors discussed in the jurisprudence. *Williamson*, 597 So.2d at 442. Based on the trial court's assessment of plaintiff counsel's credibility and acceptance of his time sheets as reasonable, the trial court did just that and fully explained its reasons for the fee set.

We agree that all of counsel's work was "intertwined" in the sense that in proving the Jones Act claim, the plaintiff necessarily also had to prove entitlement to maintenance and cure. He had to prove that his client was, in fact, injured in the service of the ship, disabled, and needed medical treatment as a result of her work related injury.

Under the manifest error rule, we must give deference to the original trial court's ruling that punitive damages and attorney fees were due because of defendant's arbitrary and capricious failure to pay maintenance and cure when due. As a corollary, we must also give due deference to the excellent work by the trial court on remand and his vast discretion in accepting plaintiff attorney's testimony as credible on the total hours spent and the appropriate hourly rate, as well as its finding that ninety percent of counsel's total time should be allocated to the maintenance and cure issue in order to arrive at the total award. That finding is fully supported by the factual record in this case, as well as the jurisprudence on

15

this issue.

In *Clausen v. Icicle Seafoods, Inc.*, 174 Wash.2d 70, 82, 272 P.3d 827 (3/15/12), *cert. denied* ___ U.S. ___, 133 S.Ct. 199 (2012), the court, on an almost identical issue, stated:

> The trial court estimated that 90 percent of the attorneys' time was spent on issues related to maintenance and cure and accordingly, reduced total fees and costs by 10 percent. The court recognized that maintenance and cure issues were present from the beginning of the case and that 12 out of 14 witnesses testified about those issues.

*See also Diesler v. McCormack Aggregates Co.*, 54 F.3d 1074 (1995); *Williams v. Kingston Shipping Co. Inc.*, 925 F. 2d 721 (1991).

While it can be legitimately argued that allocation of time in this case is high, we are nevertheless constrained by the manifest error rule. There is considerable evidence in the record allowing a reasonable fact finder to make such a conclusion, especially in light of the jurisprudence approving a high allocation of time when, as here, the issues are attorney fees for arbitrary and capricious failure to pay maintenance and cure. Based on all the circumstances of this case, we affirm the factual findings of the trial court on remand as to the proper allocation of time and as to the computation used, and affirm its finding that an award of $309,174 in attorney fees is equitable under the facts and circumstances of this case. *See Hayes*, ___So.3d ___; *Clausen*, 174 Wash.2d 70; *Diesler,* 54 F.3d 1074.

***Answer To Appeal***

Plaintiff answered this appeal seeking attorney fees for preparing and trying the issue on remand in the trial court, and for again defending the attorney fee issue on this appeal. Additionally, plaintiff also answered the appeal requesting that this court assess ninety percent of the court costs associated with the trial court remand hearing to the defendants.

However, our review of the record leads us to conclude that the trial court on remand did assess those specific court costs proven by counsel to have been incurred and associated with the original trial as expressed in its ruling. The judgment further taxed all clerk of court costs not previously paid by defendant to ARTCO. The trial court's findings on the cost issue are likewise within its discretion and are affirmed.

The trial court on remand did not award attorney fees for the work done in preparation and trial of the attorney fees issue on remand, as he had not been asked to do so. Our review of the record indicates that counsel for Ms. Stermer apparently did not specifically request attorney fees for his continued work in preparation and trial of the remand. He was asked specifically at the close of the hearing whether there were any other issues for the court to decide, and responded there were not. Moreover, he prepared the judgment which likewise did not assess attorney fees for the work on remand. Therefore, the failure of counsel for Ms. Stermer to request from the trial court attorney fees for work done on remand resulted in any claim for an award of attorney fees for work on the remand issue to be abandoned. Uniform Rules—Courts of Appeal, Rule 2-12.4.

We award $10,000 in attorney fees for work done on this appeal based on our review of the record, and an estimation of counsel's time successfully defending the trial court's judgment on this appeal. *See Vaughn*, 369 U.S. 527; *Hayes*, ___So.3d ___.

## CONCLUSION

The judgment of the trial court is affirmed in all respects. This court awards counsel for Adrienne Stermer $10,000 in attorney fees for work performed on

17

appeal. Costs of this appeal are assessed to ARTCO, Agrinational Insurance Company, and Archer-Daniels-Midland Company.

**AFFIRMED.**

ADRIENNE STERMER

VERSUS

ARCHER-DANIELS-MIDLAND COMPANY, ET AL.


**Pickett, J., concurring part and dissenting in part.**

I concur with the majority's conclusions that the trial court did not err with regard to its award of court costs and that Ms. Stermer is not entitled to an award of attorney fees for work performed by her attorney on remand. I respectfully dissent, however, with regard to the majority's conclusion that Ms. Stermer is entitled to attorney fees for work performed in the trial court after ARTCO instituted payment of maintenance and cure benefits.

On remand, ARTCO argued that Ms. Stermer is only entitled to an award of attorney fees for work her counsel performed that was directly related to securing the payment of her maintenance and cure benefits and that she is not entitled to attorney fees for work performed after it began paying her benefits. Ms. Stermer counters ARTCO's contention, arguing that she is entitled to attorney fees throughout the trial and on appeal because in order to preserve her maintenance and cure benefits, she had to continuously work to prove that she was entitled to the benefits and that ARTCO's refusal to pay was callous, arbitrary, and capricious.

As noted by the majority, the issue of attorney fees for work performed in the trial court was remanded "to allow the trial court to receive evidence of what an appropriate award of attorney fees is in this case and to award attorney fees

commensurate with said evidence." *Stermer v. Archer-Daniels-Midland Co.,* 14-147, p. 15 (La.App. 3 Cir. 6/4/14), 140 So.3d 879, 889, *writ denied*, 12-766 (La. 5/18/18), 89 So.2d 1197 (emphasis added). Accordingly, the trial court was to determine an appropriate award of attorney fees for work performed by Ms. Stermer's attorney in the trial court.

The purpose of maintenance and cure is "to provide a seaman with food and lodging when he becomes sick or injured in the ship's service." *Vaughan v. Atkinson*, 369 U.S. 527 82 S.Ct. 997 (1962). The benefits are intended to protect seamen and to induce employers to protect the safety and health of seamen working for them. *Id.*

"The payment of maintenance and cure prior to suit does not constitute a waiver of any defenses which might be asserted." *Thurman v. Patton-Tully Transp. Co.*, 619 So.2d 879, 881 (La.App. 3 Cir.1993) (citing *Hokanson v. Maritime Overseas Corp.*, 1974 AMC 948 (E.D.La.1974)). *See also, Kuebel v. Dep't of Wildlife & Fisheries*, 08-18 (La.App. 4 Cir. 4/15/09), 14 So.3d 20, *writ denied*, 09-1083 (La. 9/4/09), 17 So.3d 964, overruled on other grounds, *Fulmer v. Dep't of Wildlife & Fisheries*, 10-2779 (La.App. 7/1/11), 68 So.3d 499 (State's waiver of sovereign immunity to action); *Martinez v. Abdon Callais Offshore, LLC*, (E.D.La. 6/10/09), 2009 WL 1649736. Furthermore, pursuant to *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547, 549 (5th Cir.1968), *cert. denied*, 393 U.S. 894, 89 S.Ct. 223 (1968), a seaman is not entitled to maintenance and cure if his employer establishes that the seaman "knowingly concealed material medical information [and] there is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage" when he applied for employment. The *McCorpen* defense can be raised at any time.

2

Pursuant to *Thurman*, 619 So.2d 879, and *McCorpen*, 396 F.2d 547, an employer always has the right to defend a claim for maintenance and cure benefits. The fact that an employer pays maintenance and cure benefits but contends the benefits are not owed does not entitle a seaman to recover attorney fees. A seaman is only entitled to attorney fees if the employer refused to pay the benefits and the refusal to pay is "callous and recalcitrant, arbitrary and capricious, or willful, callous and persistent." *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir.1987) (abrogated on other grounds by *Guevara v. Maritime Overseas Cor*p., 59 F.3d 1496 (5th Cir.1995) (en banc)). It logically follows, therefore, that although an employer initially refused to pay maintenance and cure benefits and its refusal was "callous and recalcitrant, arbitrary and capricious, or willful, callous and persistent," but then paid all outstanding benefits and thereafter continued to pay all benefits timely, it is liable only for attorney fees for the period of time during which the benefits were not paid. Otherwise, the employer is subjected to continued penalties for failure to pay maintenance and cure although it instituted payment of the benefits. This would reduce and/or eliminate an employer's incentive to pay maintenance and cure if the employer finds the seaman's claim questionable.

The majority concludes that notwithstanding the fact that ARTCO began paying Ms. Stermer maintenance and cure benefits in April 2010, it paid those benefits "under protest"; therefore, Ms. Stermer is entitled to recover attorney fees for work performed by her attorney throughout the trial-court phase of this litigation. The designation of the payment "under protest" has no legal significance whatsoever. An employer who pays maintenance and cure benefits from the date of injury has the legal right to litigate the issue of whether the claimant is entitled to those benefits throughout the entire trial without designating the payments

3

"under protest" and cannot be assessed with attorney fees. Whether the payments are made is the issue. Payment of maintenance and cure "under protest" does not afford the employer any more rights or subject the seaman to any additional burden.

For these reasons, I dissent from the majority's affirmation of the trial court's award of attorney fees for work performed by Ms. Stermer's attorney after ARTCO began paying maintenance and cure benefits.

I agree with the majority's acceptance of the trial court's methodology for calculating the attorney fees ARTCO owes Ms. Stermer, but I would calculate attorney fees based on Ms. Stermer's attorney's itemized bill with an ending date of May 5, 2010. As of that date, the maintenance and cure benefits had been received by Ms. Stermer's attorney, documentation concerning the benefits had been verified by the attorney, and the benefits had been distributed to Ms. Stermer. Accordingly, I would award $60,210 in attorney fees which represents 90% of the itemized attorney fees through May 5, 2010, at a rate of $300 per hour.